ROBERT L. BLAND, Judge.
. Contending that his six year old bay mare, well broken to work, perfectly sound and weighing about 1350 pounds, broke through the state owned bridge which spans the middle fork of Lee creek, on the public road leading to Bellville, in Wood county, West Virginia, on the 18th day of March 1942, and injured her stomach and left front leg so badly that she never recovered, and died nine days later, claimant seeks an award of $200.00 which sum he alleges to have been the value of said animal. He says that the state road commission had twice been notified within the last six months that the bridge was dangerous, but that no repairs had been made prior to the accident.
The petition setting forth the claim is duly verified, and a copy of an affidavit made by claimant and filed with the state road commission is filed with said petition and made a part thereof. It is alleged in the petition that after the accident' claimant had two veterinarians to attend said horse.
The claim was placed on the docket of the regular July 1942 term of the court of claims for investigation and hearing on July *233 14, 1942, and due notice of such action was' given to the claimant by the clerk on the 17th' day of June 1942. Claimant did not appear in person or by attorney or other representative to prosecute his claim on the date on which it appeared on the trial calendar of the court. The state, which had incurred expense in its investigation of the claim, had witnesses subpoenaed and present for the purpose of resisting claimant’s demand on said trial date. The state’s proof was permitted to be offered, and at the conclusion of the introduction of this evidence the clerk was directed to notify the claimant of the defense interposed by the state to his claim, and that the state had offered its evidence in support of such defense, and that the case would be considered by the court' upon such evidence unless he should appear within ten days from said 14th day of July 1942, to offer evidence in support of his claim or show cause why he should be allowed to have the case reopened for further hearing. Such notice was accordingly given to claimant by letter bearing date on the 14th day of July 1942. There was no further appearance on the part of claimant, and the case was heard upon claimant’s verified petition' and affidavit exhibited therewith and the evidence introduced :by'the state in opposition to the claim.
All claims asserted against the state or any of its agencies must be established by satisfactory proof before awards may properly be made for the payment of them. A claim asserted but not proved can have no meritorious status in the court of claims. All claims filed in the court may be contested' by the attorney general. The statute provides that the attorney general shall represent the interests of the state in all claims coming before the court. When the Legislature created the court of claims it provided a forum to which persons may come who have what they conceive to be meritorious claims against the state, and have such claims promptly arid carefully investigated and acted upon. For such purpose four regular terms of the court are held annually. Diligence on the part of claimants against the state thus favored by the Legislature should be observed. We do not believe that it was the intention or policy of the Legislature to subject the state to useless' *234 or unnecessary costs incident to delay in prosecuting claims filed in the court of claims. When the state investigates a claim and concludes upon such investigation it is without merit it is the duty of the attorney genéral to resist an award therefor. To do this it frequently becomes necessary to subpoena and have witnesses from remote sections to come to the state capital where the regular terms of the court are held. Continuances without cause are not regarded with favor by the court.
We have carefully considered the record of this claim as presented by the claimant’s verified petition and affidavit and the evidence offered on behalf of the state. From this evidence we cannot see that the death of claimant’s horse was in any manner attributable to the negligence of the state road commission.
David Harrison Woodyard, a veterinarian of forty years experience, testified that he was called on behalf of claimant to attend*the horse on the day of its death. It does not appear from the record that the horse had the attention of any veterinarian at the time of the alleged bridge accident. Dr. Woodyard was called by Ira Bennett who was in charge of the horse. Nothing was said about the horse having been injured on the bridge. Mr. Bennett told him that the horse had been sick the preceding day and had been left in the stable at night and “gast itself and got bound up and couldn’t get up, and the next morning they brought the horse up and got it to the stable door and as it went out it fell and it hadn’t been up since.” The veterinarian testified: “After I had made my examination of the horse I decided it was suffering from infla-mation of the bowels.” He called it “Fuller’s colic.” He stated that the inflammation of the bowels showed indigestion and impaction. He observed no sign of injury to the stomach or the leg and stated that the only outward sign that he observed was where the horse had beaten its head on the ground or on the stall in the barn. He expressed the opinion that the horse could not have died from injuries alleged to have been sustained on the bridge. When claimant talked with the veterinarian he did not inform him that the horse had been injured *235 on the bridge. The veterinarian was positive in his conviction that the condition of the horse could not have been caused by a fall through a bridge.
It is revealed by the record that after the horse had been extricated from its cramped position in the barn it was hitched to an automobile and pulled out of the barn and around in front of the bam door. Pulley blocks were used in raising the animal to its feet.
It was shown that a day or two before the animal became ill, and several days subsequent to the alleged bridge accident, Ira Bennett used it in moving claimant and his family to the place where claimant lived at the time of the horse’s death.
Photographs of the bridge were used for illustration, and it was shown that in the condition of the bridge it would have been impossible for a horse to fall through it.
Under the facts disclosed by the record the claim will be disposed of upon its merits. Under such facts the claimant would be entitled to no relief against the state.
The claim is dismissed.